Opinion by Judge MILAN D. SMITH, Jr.; Dissent by Judge N.R. SMITH
OPINION
M. SMITH, Circuit Judge:
This appeal presents issues of first impression regarding the scope of Federal Arbitration Act (FAA) preemption, 9 U.S.C. §2 et seq., and the meaning of the Supreme Court’s decision in AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). We must decide whether the FAA preempts the California rule announced in Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129 (2014), which bars the waiver of representative claims under the Private Attorneys General Act of 2004 (PAGA), Cal. Lab.Code § 2698 et seq. After closely examining Concepcion and the Court’s other statements regarding the purposes of the FAA, we conclude that the Iskanian rule does not stand as an obstacle to the accomplishment of the FAA’s objectives, and is not preempted. We reverse the judgment of the district court and remand for further proceedings.
FACTS AND PROCEDURAL BACKGROUND
The Plaintiff-Appellant, Shukri Sakkab (Sakkab), is a former employee of Len- *428 scrafters, an eyewear retailer owned by the Defendant-Appellee, Luxottica Retail North America, Inc. (Luxottica). On January 17, 2012, Sakkab filed a putative class action complaint against Luxottica in the Superior Court of the State of California in and for the County of San Diego. The complaint asserted four causes of action arising out of Sakkab’s employment by Luxottica, including (1) unlawful business practices, (2) failure to pay overtime compensation, (3) failure to provide accurate itemized wage statements, and (4) failure to pay wages when due. The complaint alleged that Luxottica miselassified Sak-kab and other employees as supervisors so that they would be exempt from overtime wages and meal and rest breaks. Luxotti-ca answered and timely removed the case to federal court. On March 27, 2012, Sak-kab filed a first amended complaint (FAC) adding a non-class, representative claim for civil penalties under the PAGA.
On April 23, 2012, Luxottica filed a motion to compel arbitration under the dispute resolution agreement contained in its “Retail Associate Guide.” The agreement provided, in pertinent part:
You and the Company each agree that, no matter in what capacity, neither you nor the Company will (1) file (or join, participate or intervene in) against the other party any lawsuit or court case that relates in any way to your employment with the Company or (2) file (or join, participate or intervene in) a class-based lawsuit, court case or arbitration (including any collective or representative arbitration claim).[1]
Sakkab signed an acknowledgment indicating that he understood and agreed to the terms of the dispute resolution agreement on June 25, 2010.
On January 10, 2013, the district court granted Luxottica’s motion to compel arbitration and dismissed the FAC. The court noted that Sakkab did not dispute that his first four claims were arbitrable. Sakkab argued, however, that the portion of the alternative dispute resolution agreement prohibiting him from bringing any PAGA claims on behalf of other employees was unenforceable under California law. For this reason, Sakkab argued, even if he was required to arbitrate his claims, he could not be denied a forum for his representative PAGA claim. The district court rejected Sakkab’s argument that the right to bring a representative PAGA claim is un-waivable under California law. At- the *429 time, the California Supreme Court had not yet considered whether PAGA waivers were enforceable under California law. Relying on the Supreme Court’s decision in AT & T Mobility LLC v. Concepcion, the district court concluded that the FAA would preempt a state rule barring waiver of PAGA claims. The court then granted the motion to compel arbitration of the claims in the FAC, dismissed Sakkab’s complaint, and entered judgment. This timely appeal followed.
JURISDICTION AND STANDARD OF REVIEW
The district court had jurisdiction under 28 U.S.C. § 1332(d)(2). We have appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final judgment of the district court.
“The district court’s decision to grant or deny a motion to compel arbitration is reviewed de novo.” Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 564 (9th Cir.2014) (quoting Bushley v. Credit Suisse First Boston, 360 F.3d 1149, 1152 (9th Cir.2004)).
DISCUSSION
After the district court entered judgment in this casé, the California Supreme Court ruled that PAGA waivers are unenforceable under California Law. Iskanian, 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129. On appeal, Luxottica argues that the FAA preempts the Iskanian rule. After considering the history of the PAGA statute and the Supreme Court’s FAA preemption cases, we hold that the FAA does not preempt the Iskanian rule.
I. The Labor Code Private Attorneys General Act
California’s Labor Code Private Attorneys General Act of 2004, Cal. Lab.Code § 2698 et seq., “authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state.” Iskanian, 59 Cal.4th at 360, 173 Cal.Rptr.3d 289, 327 P.3d 129. An action brought under the PAGA is a type of qui tam action. Id. at 382, 173 Cal.Rptr.3d 289, 327 P.3d 129.
The PAGA was enacted to correct two perceived flaws in California’s Labor Code enforcement scheme. Id. at 378-79, 173 Cal.Rptr.3d 289, 327 P.3d 129. The first flaw was that civil penalties were not available to redress violations of some provisions of the Labor Code. Id. at 378, 173 Cal.Rptr.3d 289, 327 P.3d 129. Those provisions only provided for criminal sanctions, not civil fines, and could only be enforced in criminal prosecutions brought by district attorneys, not in civil actions brought by the Labor Commissioner. See id. at 379, 173 Cal.Rptr.3d 289, 327 P.3d 129. As a result, many violations of the Labor Code went unpunished. Id. The PAGA addressed this problem by providing for civil penalties for most Labor Code violations. “For Labor Code violations for which no penalty is provided, the PAGA provides that the penalties are generally $100 for each aggrieved employee per pay period for the initial violation and $200 per pay period for each subsequent violation.” Id. (citing Cal. Lab.Code § 2699(f)(2)).[2]
The second flaw the PAGA addressed was that, even where the Labor Code provided for civil penalties, “there was a *430 shortage of government resources to pursue enforcement.” Id.; see also 2003 Cal. Stat. eh. 906 § 1. The legislative history of the PAGA describes the legislature’s perception of the seriousness of this problem:
“Estimates of the size of California’s ‘underground economy’ — businesses operating outside the state’s tax and licensing requirements — ranged from 60 to 140 billion dollars a year, representing a tax loss to the state of three to six billion dollars annually. Further, a U.S. Department of Labor study of the garment industry in Los Angeles, which employs over 100,000 workers, estimated the existence of over 33,000 serious and ongoing wage violations by the city’s garment industry employers, but that DIR was issuing fewer than 100 wage citations per year for all industries throughout the state. [¶] Moreover, evidence demonstrates that the resources dedicated to labor law enforcement have not kept pace with the growth of the economy in California.” (Assembly Com. on Labor and Employment, Analysis of Sen. Bill No. 796 (Reg.Sess.2003-2004) as amended July 2, 2003, p. 4.)
Iskanian, 59 Cal.4th at 379, 173 Cal.Rptr.3d 289, 327 P.3d 129. To compensate for the lack of “[a]dequate financing of essential labor law enforcement functions,” the legislature enacted the PAGA to permit aggrieved employees to act as private attorneys general to collect civil penalties for violations of the Labor Code.2003 Cal. Stat. ch. 906 § 1(d). Labor Code section 2699(a) provides:
any provision of [the Labor Code] that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees....
Seventy-five percent of the civil penalties recovered by aggrieved employees[3] under the PAGA are distributed to the Labor and Workforce Development Agency, while the remainder is distributed to the aggrieved employees. Cal. Lab. Code § 2699(i).[4]
Pre-dispute agreements to waive PAGA claims are unenforceable under California law. In Iskanian v. CLS Transportation Los Angeles, LLC, the California Supreme Court held that two state statutes prohibited the enforcement of PAGA waivers. 59 Cal.4th at 382-83, 173 Cal.Rptr.3d 289, 327 P.3d 129. The first, California Civil Code § 1668, codifies the general principle that agreements exculpating a party for violations of the law are unenforceable.[5] The Iskanian court observed *431 that allowing employees to waive the right to bring PAGA actions would “disable one of the primary mechanisms for enforcing the Labor Code.” Id. at 383, 173 Cal. Rptr.3d 289, 327 P.3d 129. It reasoned that “[b]ecause such an agreement has as its ‘object, ... indirectly, to exempt [the employer] from responsibility for [its] own ... violation of law,’ it is against public policy and may not be enforced.” Id. (alterations in original) (quoting Cal. Civ. Code § 1668). The Iskanian court also found that agreements waiving the right to bring PAGA actions violated California Civil Code § 3513. Id. Civil Code § 3513 codifies the general principle that a law established for a public reason may not be contravened by private agreement.[6] The court reasoned that “agreements requiring the waiver of PAGA rights would harm the state’s interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations.” Id.
Agreements waiving the right to bring “representative” PAGA claims — that is, claims seeking penalties for Labor Code violations affecting other employees — are also unenforceable under California law. In Iskanian, the court held that even if the PAGA authorized purely “individual” claims,[7] an agreement to waive representative PAGA claims would be unenforceable. Id. at 384, 173 Cal.Rptr.3d 289, 327 P.3d 129. The court observed that individual PAGA claims do not “result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code.” Id. (quoting Brown v. Ralphs Grocery Co., 197 Cal.App.4th 489, 502, 128 Cal.Rptr.3d 854 (2011)).
II. The Federal Arbitration Act Does Not Preempt the Iskanian Rule
If the Iskanian rule is valid, Sak-kab’s waiver of his right to bring a representative PAGA action is unenforceable. Therefore, this case turns on whether the FAA, 9 U.S.C. §2 et seq., preempts the Iskanian rule. We conclude that it does not.
“The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements.” Concepcion, 131 S.Ct. at 1745. Section 2 is the “primary substantive provision of the Act.” Id. (quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). It provides:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2. While “[t]he FAA contains no express pre-emptive provision” and does not “reflect a congressional intent to occupy the entire field of arbitration,” Volt *432 Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), it preempts state law “to the extent that it ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,’ ” id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). The final clause of § 2, its saving clause, “permits agreements to arbitrate to be invalidated by ‘generally applicable contract defenses, such as fraud, duress, or unconscionability,’ but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.” Concepcion, 131 S.Ct. at 1746 (quoting Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)); see also Marmet Health Care Ctr., Inc. v. Brown, — U.S. -, 132 S.Ct. 1201, 1204, 182 L.Ed.2d 42 (2012). Even if a state-law rule is “generally applicable,” it is preempted if it conflicts with the FAA’s objectives. Concepcion, 131 S.Ct. at 1748.
A. The Iskanian Rule is a Ground for the Revocation of Any Contract
To fall within the ambit of § 2’s saving clause, the Iskanian rule must be a “ground[ ] ... for the revocation of any contract.” 9 U.S.C. § 2 (emphasis added). We conclude that it is.
The Supreme Court has clarified that a state contract defense must be “generally applicable” to be preserved by § 2’s saving clause. Concepcion, 131 S.Ct. at 1746. It is well established that the FAA preempts state laws that single out arbitration agreements for special treatment. See, e.g., Doctor’s Assocs., 517 U.S. at 687, 116 S.Ct. 1652. At minimum, then, § 2’s “any contract” language requires that a state contract defense place arbitration agreements on equal footing with non-arbitration agreements. See id. The Iskani-an rule complies with this requirement. The rule bars any waiver of PAGA claims, regardless of whether the waiver appears in an arbitration agreement or a non-arbitration agreement.
Some of our cases can be read to suggest that the phrase “any contract” in § 2’s saving clause requires that a defense apply generally to all types of contracts, in addition to requiring that the defense apply equally to arbitration and non-arbitration agreements. See Ting v. AT & T, 319 F.3d 1126, 1147-48 (9th Cir.2003) (holding that California’s Consumer Legal Remedies Act, Cal. Civ.Code § 1751, is “not a law of ‘general applicability’ ” within the ambit of § 2’s saving clause because it applies only to noncommercial consumer contracts); Bradley v. Harris Research, Inc., 275 F.3d 884, 890 (9th Cir.2001) (holding that California Business St Professions Code § 20040.5 does not apply to “any contract” because it “applies only to forum selection clauses and only to franchise agreements”).[8] However, the Court’s de- *433 cisión in AT & T Mobility, LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742, cuts against this construction of the saving clause. The Court in Concepcion held that the FAA preempted California law providing that class action waivers in certain consumer contracts of adhesion were unconscionable and unenforceable. 131 S.Ct. at 1748-53. Even though the state-law rule at issue only applied to a narrow class of consumer contracts, the Court strongly implied that the rule was a “generally applicable contract defense[].” See id. at 1748. The Court held that the rule was preempted because it conflicted with the purposes of the FAA, even though the rule purported to apply to “any contract.” See id. (“Although § 2’s saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA’s objectives.”).
Following the logic of Concepcion, we conclude that the Iskanian rule is a “generally applicable” contract defense that may be preserved by § 2’s saving clause, provided it does not conflict with the FAA’s purposes.
B. The Iskanian Rule Does Not Conflict with the FAA’s Purposes
We turn now to whether the Iska-nian rule conflicts with the FAA’s purposes. We apply ordinary conflict preemption principles to determine whether a state-law rule conflicts with a federal statute containing a saving clause. See Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 870-72, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). In determining whether a state law is impliedly preempted, “[t]he purpose of Congress is the ultimate touchstone.” Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (alteration in original) (quoting Retail Clerks Int’l Ass’n, Local 1625, AFL-CIO v. Schermerhorn, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). “What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.... ” Crosby v. Nat’l Foreign Trade Council, 530 U.S. 363, 373, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). In exercising our judgment, we do not write on a blank slate, for the Supreme Court has repeatedly identified the purposes of the FAA and defined the scope of FAA preemption. See Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 283, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (O’Connor, J., concurring) (describing the Court’s FAA preemption jurisprudence as “an edifice of [the Court’s] own creation”). After considering the objectives of the FAA, we conclude that the Iskanian rule does not conflict with those objectives, and is not impliedly preempted.[9]
*434 1. The FAA’s Purpose to Overcome Judicial Hostility to Arbitration
The Supreme Court has stated that Congress enacted the FAA to “overrule the judiciary’s longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.” Granite Rock Co. v. Int’l Bhd. of Teamsters, 561 U.S. 287, 302, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (quoting Volt, 489 U.S. at 478, 109 S.Ct. 1248). The FAA therefore preempts state laws prohibiting the arbitration of specific types of claims. See, e.g., Marmet, 132 S.Ct. at 1203; Preston v. Ferrer, 552 U.S. 346, 356-59, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). The Amici Curiae argue that the Iskanian rule conflicts with the FAA’s purpose to overcome judicial hostility to arbitration because it prohibits outright the arbitration of “individual” PAGA claims. We reject this argument.
The California Supreme Court’s decision in Iskanian expresses no preference regarding whether individual PAGA claims are litigated or arbitrated. It provides only that representative PAGA claims may not be waived outright. 59 Cal.4th at 384, 173 Cal.Rptr.3d 289, 327 P.3d 129. The Iskanian rule does not prohibit the arbitration of any type of claim.
2. The FAA’s Purpose to Ensure Enforcement of the Terms of Arbitration Agreements
The Supreme Court has stated that “[t]he ‘principal purpose’ of the FAA is to ‘ensur[e] that private arbitration agreements are enforced according to their terms.’ ” Concepcion, 131 S.Ct. at 1748 (second alteration in original) (quoting Volt, 489 U.S. at 478, 109 S.Ct. 1248). The Court has also stated that the FAA embodies “a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.” Id. at 1749 (quoting Moses H. Cone, 460 U.S. at 24, 103 S.Ct. 927). The Iskanian rule does not conflict with these purposes.
Read broadly, these statements of the FAA’s purposes would require strict enforcement of all terms contained in an arbitration agreement, including terms that are unenforceable under generally applicable state law. Such a broad construction of the FAA’s purposes is untenable, of course, because it would render § 2’s saving clause wholly “ineffectual.” See Geier, 529 U.S. at 870, 120 S.Ct. 1913; Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (“As the ‘saving clause’ in § 2 indicates, the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so.”). Congress plainly did not intend to preempt all generally applicable state contract defenses, only those that “interfere[] with arbitration,” Concepcion, 131 S.Ct. at 1750.
A defense interferes with arbitration if, for example, it prevents parties from selecting the procedures they want applied in arbitration. See id. at 1748-53. Concepcion illustrates how a generally applicable contract defense might do so. The California rule at issue in Concepcion, which provided that class action waivers in certain consumer contracts of adhesion *435 were unconscionable, did not explicitly discriminate against arbitration. See id. at 1745. As applied to arbitration agreements, however, the rule “interfere[ed] with fundamental attributes of arbitration,” id. at 1748, by imposing formal class-wide arbitration procedures on the parties against their will. Id. at 1750-51. As the Court explained,
“In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.” But before an arbitrator may decide the merits of a claim in classwide procedures, he must first decide, for example, whether the class itself may be certified, whether the named parties are sufficiently representative and typical, and how discovery for the class should be conducted.
Id. at 1751 (citation omitted) (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 685, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010)). ' The Court observed that “the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration — its informality— and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.” Id. The parties could not opt out of the formal procedures of class arbitration because the procedures were required to protect the due process rights of absent parties. Id. Therefore, although the California rule prohibiting class action waivers applied equally to both arbitration agreements and non-arbitration agreements, it could not be applied to arbitration agreements without interfering with parties’ freedom to select informal procedures.
The Iskanian rule prohibiting waiver of representative PAGA claims does not diminish parties’ freedom to select informal arbitration procedures. To understand why, it is essential to examine the “fundamental[ ]” differences between PAGA actions and class actions. See Baumann v. Chase Inv. Servs. Corp., 747 F.3d 1117, 1123 (9th Cir.2014) (quoting McKenzie v. Fed. Express Corp., 765 F.Supp.2d 1222, 1233 (C.D.Cal.2011)). The class action is a procedural device for resolving the claims of absent parties on a representative basis. See Fed.R.Civ.P. 23; Ortiz v. Fibreboard Corp., 527 U.S. 815, 832-33, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-17, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), By contrast, a PAGA action is a statutory action in which the penalties available are measured by the number of Labor Code violations committed by the employer. An employee bringing a PAGA action does so “as the proxy or agent of the state’s labor law enforcement agencies,” Iskanian, 59 Cal.4th at 380, 173 Cal.Rptr.3d 289, 327 P.3d 129 (quoting Arias v. Superior Court, 46 Cal.4th 969, 986, 95 Cal.Rptr.3d 588, 209 P.3d 923 (2009)), who are the real parties in interest, see id. at 382, 173 Cal.Rptr.3d 289, 327 P.3d 129. As the state’s proxy, an employee-plaintiff may obtain civil penalties for violations committed against absent employees, Cal. Lab.Code § 2699(g)(1), just as the state could if it brought an enforcement action directly. However, by obtaining such penalties, the employee-plaintiff does not vindicate absent employees’ claims, for the PAGA does not give absent employees any substantive right to bring their “own” PAGA claims. See Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court, 46 Cal.4th 993, 1003, 95 Cal.Rptr.3d 605, 209 P.3d 937 (2009); see also Iskanian, 59 Cal.4th at 381, 173 Cal.Rptr.3d 289, 327 P.3d 129 (explaining that *436 “[t]he civil penalties recovered on behalf of the state under the PAGA are distinct from, the statutory damages to which employees may be entitled in their individual capacities”). An agreement to waive “representative” PAGA claims — that is, claims for penalties arising out of violations against other employees — is effectively an agreement to limit the penalties an employee-plaintiff may recover on behalf of the state.
Because a PAGA action is a statutory action for penalties brought as a proxy for the state, rather than a procedure for resolving the claims of other employees, there is no need to protect absent employees’ due process rights in PAGA arbitra-tions. Compare Concepcion, 131 S.Ct. at 1751-52 (observing “it is ... odd to think that an arbitrator would be entrusted with ensuring that third parties’ due process rights are satisfied”), with Arias, 46 Cal.4th at 984-87, 95 Cal.Rptr.3d 588, 209 P.3d 923. PAGA arbitrations therefore do not require the formal procedures of class arbitrations. See Baumann, 747 F.3d at 1123.[10]
Unlike Rule 23(c)(2), PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action. In a PAGA action, the court does not inquire into the named plaintiffs and class counsel’s ability to fairly and adequately represent unnamed employees — critical requirements in federal class actions under Rules 23(a)(4) and (g)- Moreover, unlike Rule 23(a), PAGA contains no requirements of numerosity, commonality, or typicality.
Id. at 1122-23 (citations omitted). Because representative PAGA claims do not require any special procedures, prohibiting waiver of such claims does not diminish parties’ freedom to select the arbitration procedures that best suit their needs. Nothing prevents parties from agreeing to use informal procedures to arbitrate representative PAGA claims. This is a critically important distinction between the Iskani-an rule and the rule at issue in Concepcion.
The dissent emphasizes that both the Iskanian rule and the rule at issue in Concepcion “interfere[] with the parties’ freedom to limit their arbitration only to those claims arising between the contracting parties.” We do not read Concepcion to require the enforcement of all waivers of representative claims in arbitration agreements. Whether a claim is technically denominated “representative” is an imperfect proxy for whether refusing to enforce waivers of that claim will deprive parties of the benefits of arbitration.[11] Instead, Concepcion requires us to examine *437 whether the waived claims mandate procedures that interfere with arbitration, as the class claims in Concepcion did. Here,they do not.
We take the dissent’s broader- point to be that the Iskanian rule defeats the parties’ contractual expectations, as expressed in their arbitration agreement. See Concepcion, 131 S.Ct. at 1752 (“Arbitration is a matter of contract, and the FAA requires courts to honor parties’ expectations.”). We recognize that Sakkab and Luxottica likely expected the waiver of representative PAGA claims to be enforced, and that the Iskanian rule prevents that expectation from being fulfilled. Any generally applicable state law that invalidates a mutually agreed upon term of an arbitration agreement will, by definition, defeat the parties’ contractual expectations. However, the FAA’s saving clause clearly indicates that Congress did not intend for the parties’ expectations to trump any and all other interests. As we have explained, a rule requiring that the parties’ expectations be enforced in all circumstances, regardless of whether doing so conflicts with generally applicable state law, would render the saving clause wholly ineffectual.
We acknowledge that the Court in Concepcion also expressed concern that “class arbitration greatly increases risks to defendants” by aggregating claims and increasing the amount of potential damages. Id. at 1752. As the Court observed, arbitration is “poorly suited to the higher stakes of class litigation,” because it does not provide for judicial review. Id. Although PAGA actions do not aggregate individual claims, they may nonetheless involve high stakes. Defendants may face hefty civil penalties in PAGA actions, and may be unwilling to forgo judicial review by arbitrating them. It does not follow, however, that the FAA preempts the Iska-nian rule just because the amount of civil penalties the PAGA authorizes could make arbitration a less attractive method than litigation for resolving representative PAGA claims. By their nature, some types of claims are better suited to arbitration than others. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (recognizing that agreements to arbitrate federal statutory claims are enforceable even if they do not appear to be “appropriate for arbitration”). But the FAA would not preempt a state statutory cause of action that imposed substantial liability merely because the action’s high stakes would arguably make it poorly suited to arbitration. Cf. Medtronic, 518 U.S. at 485, 116 S.Ct. 2240 (“[Bjecause the states are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action.”). Nor, we think, would the FAA require courts to enforce a provision limiting a party’s liability in such an action, even if that provision appeared in an arbitration agreement. Cf. Booker v. Robert Half Int’l, Inc., 413 F.3d 77, 83 (D.C.Cir.2005) (assuming, without deciding, that a term in an arbitration agreement barring punitive damages was unenforceable as applied to a .claim under the District of Columbia Human Rights Act). The FAA contemplates that parties may simply agree ex ante to litigate high-stakes claims if they -find arbitration’s informal procedures unsuitable. By the same token, the FAA does not require courts to enforce agreements to waive the right to bring representative PAGA actions just because the amount of penalties an aggrieved employee is authorized to recover for the state makes the formal procedures of litigation more attractive than arbitration’s informal procedures. Just as the high stakes involved in antitrust actions may cause parties to agree ex ante to exclude antitrust claims from arbitration, *438 parties may prefer to litigate representative PAGA claims.
It is true that PAGA actions, like many causes of action, can be complex. It is not true, however, that PAGA actions are necessarily “proeedurally” complex, as the dissent claims. Rather, the potential complexity of PAGA actions is a direct result of how an employer’s liability is measured under the statute. The amount of penalties an employee may recover is measured by the number of violations an employer has committed, and the violations may involve multiple employees. “[P]otential complexity should not suffice to ward off arbitration,” Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 633, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), where, as here, the complexity flows from the substance of the claim itself, rather than any procedures required to adjudicate it (as with class actions). Cf. id. (holding that an agreement to arbitrate antitrust claims was enforceable). •
The dissent argues that representative PAGA actions will make the arbitration process “slower” and “more costly.” There is no support for this conclusion in the record. Cf. Concepcion, 131 S.Ct. at 1751 (citing American Arbitration Association statistics regarding the duration of class arbitrations). Moreover, even if there were evidence that representative PAGA actions take longer or cost more to arbitrate than other types of claims, the same could be said of any complex or fact-intensive claim. Antitrust claims, for example, have the potential to make arbitration slower and more costly. This does not mean that a rule declining to enforce waivers of such claims interferes with the FAA in any meaningful sense, since, unlike class claims, parties are free to arbitrate them using the procedures of their choice. In many ways, arbitration is well suited to resolving complex disputes, provided that the parties are free to decide how the arbitration will be conducted. See id.; see also American Arbitration Association Commercial Arbitration Rules (describing separate procedures for “Large, Complex, Commercial Disputes”).
The dissent also argues that representative PAGA claims are “more likely to generate procedural morass.” But whether arbitration of representative PAGA actions is likely to “generate procedural morass” depends, first and foremost, on the procedures the parties select. One way parties may streamline the resolution of complex PAGA .claims is by agreeing to limit discovery in arbitration. See Dotson v. Amgen, Inc., 181 Cal.App.4th 975, 983, 104 Cal.Rptr.3d 341 (2010) (observing that “arbitration is meant to be a streamlined procedure. Limitations on discovery, including the number of depositions, is one of the ways streamlining is achieved”). California courts have recognized that “discovery limitations are an integral and permissible part of the arbitration process.” Id. (citing Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 106 n. 11, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000)); see also Roman v. Superior Court, 172 Cal.App.4th 1462, 1476, 92 Cal.Rptr.3d 153 (2009). Notably, California law permits parties to arbitrate under the American Arbitration Association’s employment dispute resolution rules. See Roman, 172 Cal.App.4th at 1476, 92 Cal.Rptr.3d 153. The rules give arbitrators broad authority to decide how much discovery is appropriate, “consistent with the expedited nature of arbitration.” See American Arbitration Association Employment Arbitration Rules and Mediation Procedures (2009), at 19.
Of course, whether representative PAGA claims are likely to “generate procedural morass” will also depend on whether, and to what extent, state law purports to limit parties’ right to use infor *439 mal procedures, including limited discovery, in representative PAGA arbitrations. It is conceivable that a state law imposing such limits could run afoul of the Court’s decision in Concepcion by requiring a degree of formality that is inconsistent with traditional arbitration procedures. See Concepcion, 131 S.Ct. at 1751. No such state law is before us, however, and it is premature to conclude that representative PAGA claims will necessarily result in “procedural morass” when there is no indication that state law limits parties’ freedom to select informal procedures, or limit discovery, in PAGA arbitrations. Cf. Williams v. Superior Court, 236 Cal.App.4th 1151, 1156-58, 187 Cal.Rptr.3d 321 (2015) (upholding trial court’s refusal to order statewide discovery in a PAGA action and observing that “[pjlaintiffs proposed procedure, which contemplates jumping into extensive statewide discovery based only on the bare allegations of one local individual having no knowledge of the defendant’s statewide practices would be a classic use of discovery tools to wage litigation rather than facilitate it”).
In sum, the Iskanian rule does not conflict with the FAA, because it leaves parties free to adopt the kinds of informal procedures normally available in arbitration. It only prohibits them from opting out of the central feature of the PAGA’s private enforcement scheme — the right to act as a private attorney general to recover the full measure of penalties the state could recover.
Our conclusion that the FAA does not preempt the Iskanian rule is bolstered by the PAGA’s central role in enforcing California’s labor laws. The Court has instructed that “[i]n all pre-emption eases” we must “start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.” Medtronic, 518 U.S. at 485, 116 S.Ct. 2240 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)); see also Arizona v. United States, — U.S. -, 132 S.Ct. 2492, 2503,183 L.Ed.2d 351 (2012) (considering historic police powers of the State in analyzing obstacle preemption). “States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.” Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 756, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (quoting DeCanas v. Bica, 424 U.S. 351, 356, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976)).
Both the PAGA statute and the Iskani-an rule reflect California’s judgment about how best to enforce its labor laws. “[T]he Legislature’s purpose in enacting the PAGA was to augment the limited enforcement capability of the Labor and Workforce Development Agency by empowering employees to enforce the Labor Code as representatives of the Agency.” Iskanian, 59 Cal.4th at 383, 173 Cal.Rptr.3d 289, 327 P.3d 129. And the “sole purpose” of the Iskanian rule “is to vindicate the Labor and Workforce Development Agency’s interest in enforcing the Labor Code.” Id. at 388-89, 173 Cal.Rptr.3d 289, 327 P.3d 129. The explicit purpose of the rule barring enforcement of agreements to waive representative PAGA claims is to preserve the deterrence scheme the legislature judged to be optimal. See id. at 384, 173 Cal.Rptr.3d 289, 327 P.3d 129.
As the California Supreme Court has explained, a PAGA action is a form of qui tam action. See id. at 382, 173 Cal.Rptr.3d 289, 327 P.3d 129. Qui tam actions predate the FAA by several centuries. See Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 773-76, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). The FAA was not *440 intended to preclude states from authorizing qui tam actions to enforce state law. Nor, we think, was it intended to require courts to enforce agreements that severely limit the right to recover penalties for violations that did not directly harm the party bringing the action. The right to inform the state of violations that did not injure the informer is the very essence of a qui tam action. See id. at 775, 120 S.Ct. 1858. That qui tam actions can be difficult to arbitrate does not mean that the FAA requires courts to enforce private agreements opting out of the state’s chosen method of enforcing its labor laws.
III. Severability of the PAGA Waiver
Sakkab has not argued that the PAGA waiver contained in the arbitration agreement rendered the entire arbitration agreement void. Nor has he disputed that he is required to arbitrate the four non-PAGA claims in the FAC. It is therefore clear that the non-PAGA claims in the FAC must be arbitrated.
We have held that the waiver of Sak-kab’s representative PAGA claims may not be enforced. It is unclear, however, whether the parties have agreed to arbitrate such surviving claims or whether they must be litigated instead.[12] Accordingly, we reverse the district court’s order dismissing the FAC, and return the issue to' the district court and the parties to decide in the first instance where Sakkab’s representative PAGA claims should be resolved, and to conduct such other proceedings as are consistent with this opinion.
REVERSED and REMANDED.

. According to Luxottica, two different versions of the dispute resolution agreement existed during the time that Luxottica employed Sakkab. In June 2011, Luxottica circulated a revised version of the dispute resolution agreement. The revised version provided:
You and the Company each agree that, no matter in what capacity, neither you nor the Company will (1) file (or join, participate or intervene in) against the other party any lawsuit or court case that relates in any way to your employment with the Company or (2) file (or join, participate or intervene in) a class-based lawsuit or court case (including any collective action) that relates in any way to your employment with the Company or (3) file (or join, participate or intervene in) a class-based arbitration (including any collective arbitration claim) with regard to any claim relating in any way to your employment with the Company to the extent permitted by applicable law.
Sakkab acknowledged that he understood and agreed to the terms of the revised version. For reasons that are not entirely clear, the district court assumed that the earlier version governed the arbitrability of this dispute. We need not resolve which version of the agreement governs. Neither party has argued that the district court erred by construing the earlier version of the agreement instead of the later version, or that the results would be any different if one version applied instead of the other. On appeal, Sakkab concedes that the version relied on by the district court governs, and that this version purports to prohibit him from arbitrating representative PAGA claims.

. A court may award a lesser amount "if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.” Cal. Lab.Code § 2699(e)(2).

. An “aggrieved employee” is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.” Cal. Lab.Code § 2699(c).

. Prior to bringing a PAGA action, an employee must notify the employer and the Labor and Workforce Development Agency of the specific provisions of the Labor Code alleged to have been violated. Cal. Lab.Code § 2699.3(a)(1). The Agency is required to notify the employee and employer of whether it intends to investigate the alleged violations. Id. § 2699.3(a)(2)(A). An aggrieved employee may commence an action if he receives notice that the Agency does not intend to investigate the alleged violations, or if he does not receive notice from the Agency within 33 days of notifying the Agency and the employer. Id. An employee may also bring a PAGA action if the Agency investigates the alleged violations and does not issue a citation to the employer within a specified period of time. Id. § 2699.3(a)(2)(B).

.California Civil Code § 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful *431 injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.”

. California Civil Code § 3513 provides that "[a]ny one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.”

. The court declined to decide whether the PAGA authorizes purely “individual” claims. Iskanian, 59 Cal.4th at 384, 173 Cal.Rptr.3d 289, 327 P.3d 129.

. The reasoning of these cases was based on an ambiguous passage in Southland Corp. v. Keating, 465 U.S. 1, 16 n. 11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The Court in Southland held that § 2 preempted a provision of California’s Franchise Investment Law, Cal. Corp. Code § 31512 (1977), as applied to arbitration agreements. Id. at 10, 104 S.Ct. 852. In a partial dissent, Justice Stevens arguéd that the law was preserved by § 2 as a "ground! ] ... at law or in equity for the revocation of any contract.” Id. at 18-20, 104 S.Ct. 852 (Stevens, J., concurring in part and dissenting in part). The majority rejected this argument. It reasoned that “the defense to arbitration found in the California Franchise Investment Law is not a ground that exists at law or in equity 'for the revocation of any contract’ but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Investment Law.” Id. at 16 n. 11, 104 S.Ct. 852.
*433 Cases following Southland appear to clarify that § 2's "any contract” language refers to whether a state law places arbitration agreements on equal footing with non-arbitration agreements, not whether it applies to all types of contracts. See Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ("A court may not ... construe [an arbitration] agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.”); Doctor's Assocs., 517 U.S. at 686-87, 116 S.Ct. 1652 ("States may not ... decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause.... [T]hat kind of policy would place arbitration clauses on an unequal ‘footing,’ directly contrary to the [FAA]’s language and Congress’s intent.” (quoting Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995))).

. We reject Sakkab’s contention that the PAGA waiver is invalid because it bars the assertion of statutory rights under American Express Co. v. Italian Colors Restaurant, - *434 U.S. -, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013), and Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "The 'effective vindication’ exception, which permits the invalidation of an arbitration agreement when arbitration would prevent the 'effective vindication’ of a federal statute, does not extend to state statutes.” Ferguson v. Corinthian Colls., Inc., 733 F.3d 928, 936 (9th Cir.2013).

. A judgment in a PAGA action binds absent employees because it binds the government agency tasked with enforcing the labor laws. Arias, 46 Cal.4th at 986, 95 Cal.Rptr.3d 588, 209 P.3d 923. As the California Supreme Court has explained,
[w]hen a government agency is authorized to bring an action on behalf of an individual or iii the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party.
Id. Since the aggrieved employee bringing the action "does so as the proxy or agent of the state’s labor law enforcement agencies," absent employees are also bound by any judgment regarding civil penalties. Id.

. For example, even an "individual” PAGA claim does not arise solely between an employer and an employee. As the court in Iskanian observed, "every PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee-the plaintiff bringing the action-or as to other employees as well, is a representative action on behalf of the state.” Iskanian, 59 Cal.4th at 387, 173 Cal.Rptr.3d 289, 327 P.3d 129.

. We note that the dispute resolution agreement provides that Luxottica "expressly does not agree to arbitrate any claim on a ... representative basis.”