**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SHANNON MCBURNIE; APRIL
SPRUELL,

*Plaintiffs-Appellees*,

v.

RAC ACCEPTANCE EAST, LLC,

*Defendant-Appellant*.

No. 22-16868

D.C. No.
3:21-cv-01429-JD

OPINION

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted October 4, 2023
San Francisco, California

Filed March 14, 2024

Before: William A. Fletcher, Richard C. Tallman, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Public Injunctive Relief

The panel affirmed the district court's denial of RAC Acceptance East, LLC's motion to compel arbitration, and remanded for the district court to address named plaintiff April Spruell's standing to challenge a $1.99 expedited payment fee.

The appeal arises from a putative class action alleging that two fees imposed by RAC, the owner and operator of retail stores that lease household and electronic items through rent-to-own contracts, violated California consumer protection laws. California's *McGill* rule invalidates contractual agreements that waive the right to seek injunctive relief on behalf of the general public. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961-62 (2017). This court held in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), that RAC's arbitration agreement was unenforceable under California's *McGill* rule, that the invalid provision was not severable from the rest of the arbitration provision, and that California law was not preempted by the Federal Arbitration Act.

The panel held that *Blair* was not abrogated by the Supreme Court's subsequent decision in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022). *Viking River* dealt with California Private Attorneys General Act claims, which are different from public injunction claims brought under the consumer protection statutes at issue in *Blair* and

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

in this case. The panel therefore affirmed the district court's denial of RAC's motion to compel arbitration.

RAC argued that plaintiffs' claim for public injunctive relief was mooted by a Consent Decree that RAC entered into with the California Attorney General. The Consent Decree prohibited RAC from charging or listing a fee that it could not establish as a reasonable actual cost incurred by RAC. RAC argued that plaintiffs' requested injunction against the $45 processing fee that RAC assessed as part of every new rent-to-own agreement would merely duplicate this relief. The panel held that the public injunction that plaintiffs sought would provide relief that was not addressed by the Consent Decree, and therefore affirmed the district court's finding that the challenge to the $45 fee was not moot.

RAC further argued that plaintiffs lacked standing to challenge the $1.99 expedited payment fee for every payment made via telephone because plaintiff Spruell conceded that she did not actually pay the $1.99 fee. Because the district court did not address the issue in its order denying RAC's motion to compel arbitration, the panel remanded for the district court to do so.

## COUNSEL

Robert F. Friedman, I (argued), Littler Mendelson PC, Dallas, Texas; Julie M. McGoldrick and Shannon R. Boyce, Littler Mendelson PC, Los Angeles, California; Kaitlyn M. Burke, Upbound Group Inc., Plano, Texas; Kevin Ranlett, Mayer Brown LLP, Washington, D.C.; Matthew G. Ball, K&L Gates LLP, San Francisco, California; Wai H. Wong

and Caitlin C. Blanche, K&L Gates LLP, Irvine, California; for Defendant-Appellant.

Michael Rubin (argued), Connie K. Chan, and Christine M. Salazar, Altshuler Berzon LLP, San Francisco, California; James T. Hannink and Zachariah P. Dostart, Dostart Hannink LLP, La Jolla, California; for Plaintiffs-Appellees.

Peter B. Rutledge, University of Georgia School of Law, Athens, Georgia; Jennifer B. Dickey and Jordan L. Von Borken, United States Chamber Litigation Center, Washington, D.C.; Deborah R. White, Retail Litigation Center Inc., Washington, D.C.; Stephanie A. Martz, National Retail Federation, Washington, D.C.; for Amici Curiae Chamber of Commerce of the United States of America, Retail Litigation Center Inc., and National Retail Federation.

## OPINION

W. FLETCHER, Circuit Judge:

Plaintiffs brought a putative class action alleging that defendant RAC Acceptance East, LLC ("RAC") charged two fees that violated California consumer protection laws. After more than a year of discovery and multiple rounds of settlement negotiations, RAC moved to compel arbitration of the named plaintiffs' claims.

We held in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), that RAC's arbitration agreement is unenforceable under California law, and that California law is not preempted by the Federal Arbitration Act ("FAA"). RAC argues that *Blair* was abrogated by the Supreme Court's subsequent decision in *Viking River Cruises, Inc. v.*

*Moriana*, 596 U.S. 639 (2022).  We disagree.  We affirm the district court's denial of RAC's motion to compel arbitration.

## I. Factual and Procedural Background

RAC owns and operates retail stores that lease household and electronic items through rent-to-own contracts, under which the consumer rents an item, agrees to pay a set number of installments, and then takes ownership of the item once all payments are made.

In 2017 and 2020, respectively, April Spruell and Shannon McBurnie each entered into rent-to-own agreements with RAC for furniture.  They each paid a $45 processing fee that RAC assessed as part of every new rent-to-own agreement.  Further, they each agreed to pay an additional $1.99 as an expedited payment fee for every payment made via telephone.

Spruell and McBurnie each signed RAC's arbitration agreement, which provided that "in the event of any dispute or claim between us, either you or RAC may elect to have that dispute or claim resolved by binding arbitration."  In relevant part, the arbitration agreement also provided:

> [N]either you nor RAC may seek, nor may the Arbitrator award, relief that would affect RAC account holders other than you.  There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action.

California's *McGill* rule invalidates contractual provisions that waive the right to seek injunctive relief on

behalf of the general public. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961–62 (2017). In *Blair*, we considered the same RAC arbitration agreement as the agreement at issue here. We held that the agreement contained a provision that is unenforceable under *McGill*, and that the invalid provision is not severable from the rest of the arbitration agreement. *Blair*, 928 F.3d at 822. We also held that California's *McGill* rule is not preempted by the FAA. *Id.*

Spruell and McBurnie filed a class action complaint on December 11, 2020, alleging that the $45 processing fee and $1.99 expedited payment fee are unlawful under several California consumer protection statutes—the Karnette Rental-Purchase Act, Cal. Civ. Code § 1812.620 et seq. ("Karnette Act"), the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq., and the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. They sought restitution and damages, statutory fines, attorneys' fees and costs, and public injunctions prohibiting RAC from continuing to charge the contested fees.

From August 2021 to August 2022, the parties conducted discovery proceedings and participated in multiple settlement negotiations. In August 2022, RAC moved for the first time to compel arbitration of plaintiffs' claims. RAC acknowledged in its motion that *Blair* prevented enforcement of the arbitration agreement. However, RAC argued that the Supreme Court's June 2022 decision in *Viking River* implicitly abrogated *Blair*, allowing enforcement of RAC's arbitration agreement. RAC also argued that the plaintiffs' challenge to the $45 processing fee is moot because the California Attorney General had recently obtained an injunction that banned RAC from "[c]harging or listing a processing fee or any other fee that [RAC] cannot establish as reasonable and an actual cost

incurred by [RAC]" under the Karnette Act, thereby curing any injury arising out of the $45 processing fee. RAC further argued that plaintiff Spruell, the only plaintiff who claimed to have paid the $1.99 expedited payment fee, could not challenge the fee because she could not show that she in fact paid it.

The district court denied RAC's motion. The court found that RAC waived its right to demand arbitration by actively litigating the case for over a year and a half before moving to compel. The court further held that even if RAC had preserved its right to arbitration, *Viking River* did not abrogate *Blair*, and that the injunction obtained by the California Attorney General did not moot plaintiffs' request for public injunctive relief. The court did not address whether plaintiff Spruell had standing to challenge the $1.99 fee charged for expedited telephone payments. We review these issues in turn.

## II.  Enforcement of the Arbitration Agreement

RAC argues the district court erred in denying its motion to compel arbitration of plaintiffs' claims, renewing its argument that the Supreme Court's decision in *Viking River* implicitly abrogated our holding in *Blair*. We have jurisdiction under 9 U.S.C. § 16(a)(1)(C). We review de novo. *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc).

## A.  *Blair*

Several California statutes, including those upon which plaintiffs rely, authorize public injunctions. A public injunction is a form of "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal. 5th at

951.  The California Supreme Court held in *McGill* that state law prohibits contractual waivers of a party's right to seek public injunctive relief.  *Id*. at 952.

The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  To determine whether the FAA preempts a state-law rule that would otherwise invalidate an arbitration agreement, we first ask whether the state-law rule is a "generally applicable contract defense[]."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  The FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *Id.* (citation omitted).

If the relevant state-law rule is not a generally applicable contract defense, the FAA preempts the state-law rule and the arbitration agreement may be enforced.  If, however, the state-law rule is a generally applicable contract defense, we ask whether the state-law rule nevertheless "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343.  At this step, we consider the "fundamental attributes of arbitration" and ask whether the state-law rule "creates a scheme inconsistent" with those attributes.  *Id*. at 344.

In *Blair*, we applied *Concepcion*'s preemption analysis to California's *McGill* rule and held that the rule was not preempted by the FAA.  We first determined that the *McGill* rule was a generally applicable contract defense, noting the rule "expresses no preference as to whether public injunction

claims are litigated or arbitrated," but instead "merely prohibits the waiver of the right to pursue those claims in any forum." *Blair*, 928 F.3d at 827. We noted that the *McGill* rule "derives from a general and long-standing prohibition on the private contractual waiver of public rights." *Id.*

We then asked whether the *McGill* rule impedes the FAA's goal of enforcing arbitration agreements "according to their terms 'so as to facilitate streamlined proceedings.'" *Id.* at 828 (citation omitted). We observed that claims for public injunctive relief require no special procedures and are brought by an individual plaintiff who "retains sole control over the suit." *Id.* at 829. The *McGill* rule invalidates contractual provisions that completely waive the right to bring public injunctive claims, but it "leaves undisturbed an agreement that both requires bilateral arbitration and permits public injunctive claims." *Id.* After deciding that the FAA does not preempt the *McGill* rule, we held in *Blair* that RAC's arbitration agreement was unenforceable because it violated the *McGill* rule by including a provision that completely waived the right to seek public injunctive relief and that provision was not severable from the rest of the arbitration agreement. *Id.* at 831–32.

In deciding that the FAA did not preempt the *McGill* rule, we relied on our prior decision in *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015), writing that "our decision in *Sakkab* all but decides this case." *Blair*, 928 F.3d at 825. *Sakkab* involved an arbitration agreement that waived the right to bring representative claims on behalf of other employees under California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 et seq. *Sakkab*, 803 F.3d at 427-28. PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer

for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 360 (2014). In *Iskanian*, the California Supreme Court held unenforceable contracts that categorically waived the right to bring PAGA claims. *Id.*

The issue in *Sakkab* was whether the FAA preempted the *Iskanian* rule. We first determined that the *Iskanian* rule was a generally applicable contract defense because the rule "bars any waiver of PAGA claims, regardless of whether the waiver appears in an arbitration agreement or a non-arbitration agreement." *Sakkab*, 803 F.3d at 432. We then determined that the *Iskanian* rule left "parties free to adopt the kinds of informal procedures normally available in arbitration." *Id*. at 439. We therefore held in *Sakkab* that the FAA did not preempt the *Iskanian* rule. *Id*.

## B. *Viking River*

The Supreme Court's decision in *Viking River* partially overruled *Iskanian*. There were two *Iskanian*-based state-law rules before the Court in *Viking River*. The first was a rule prohibiting contractual waiver of the right to bring a "representative" PAGA claim in any forum. *Viking River*, 596 U.S. at 662. The Court upheld that rule, writing, "[T]hat aspect of *Iskanian* is not preempted by the FAA." *Id.*

The second *Iskanian* rule was a mandatory joinder rule that forbade dividing PAGA claims into individual and representative claims. Under PAGA, an employee with a single alleged Labor Code violation may "seek any civil penalties the state can, including penalties for violations involving employees other than the PAGA litigant herself." *Id*. at 646–47 (quoting *ZB, N.A. v. Superior Ct.*, 8 Cal. 5th 175, 185 (2019)). Thus, "[t]he only way for parties to agree

to arbitrate *one* of an employee's PAGA claims is to also 'agree' to arbitrate *all other* PAGA claims in the same arbitral proceeding. The effect of *Iskanian*'s rule mandating this mechanism is to coerce parties into withholding PAGA claims from arbitration." *Id.* at 661. Because individual and representative claims could not be divided, *Iskanian* effectively forbade waiver of the right to bring either such claim in court. The Court struck down *Iskanian*'s second rule, holding that the FAA prevented PAGA from insulating individual claims from arbitration in this manner. *Id.* at 662.

### C. Discussion

RAC argues that *Viking River* implicitly overrules not only *Iskanian*'s second rule, but also its first, and that, as a consequence, *Blair* no longer binds us. In general, "a panel opinion is binding on subsequent panels unless and until overruled by an en banc decision of this circuit" or "where 'intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority.'" *United States v. Easterday*, 564 F.3d 1004, 1010–11 (9th Cir. 2009) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)). The "clearly irreconcilable" requirement "is a high standard." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012)). "[I]f we can apply our precedent consistently with that of the higher authority, we must do so." *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019).

RAC argues that *Viking River* is clearly irreconcilable with *Blair*. We disagree. *Viking River* is entirely consistent with *Blair*.

*Viking River* dealt with PAGA claims, which are different from public injunction claims brought under the

consumer protection statutes at issue in *Blair* and this case. In *Viking River*, the Supreme Court was concerned that PAGA's mandatory joinder rule forced parties to resolve their individual PAGA disputes in court, thereby violating "the fundamental principle that 'arbitration is a matter of consent.'" 596 U.S. at 659 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)). But the mandatory joinder rule is specific to California's PAGA statute. It does not exist under the consumer statutes at issue in *Blair* and in the case before us.

To state it another way, the only rule at issue in the case before us is the *McGill* rule. The *McGill* rule forbids a party to waive the right to seek a public injunction. The *McGill* rule is essentially the first *Iskanian* rule, which the Supreme Court explicitly upheld in *Viking River*. That rule forbids a party to waive the right to bring a representative claim in any forum. We held in *Blair* that the *McGill* rule is not preempted by the FAA. Far from overruling our holding in *Blair*, *Viking River* reaffirms it.

We therefore affirm the district court's denial of RAC's motion to compel arbitration. We need not reach the other grounds urged by plaintiffs for affirming the district court's decision.

## III.  Mootness and Standing

RAC argues that plaintiffs' claim for public injunctive relief is mooted by the Consent Decree that RAC entered into with the California Attorney General. The Consent Decree prohibits RAC from "[c]harging or listing a processing fee or any other fee that [RAC] cannot establish as reasonable and an actual cost incurred by [RAC], as described [under the Karnette Act] in Civil Code section 1812.624, subdivision (a)(7)." RAC argues that plaintiffs'

requested injunction against the $45 processing fee would "merely duplicate[]" this relief.

The district court rejected this argument, finding that "the $45 processing fee at issue here was not the focus of the California Attorney General's investigation" and that plaintiffs are entitled to "seek public injunctive relief that is more concrete than merely reaffirming that RAC is required to abide by California law on rental-purchase agreements." We agree. The Consent Decree did not determine whether the $45 processing fee in this case violates the Karnette Act's requirement that fees be "reasonable" and that the fees represent an "actual cost" incurred by RAC. Thus, the public injunction that plaintiffs seek would provide relief that is not addressed by the Consent Decree. We affirm the district court's finding that plaintiffs' challenge to the $45 processing fee is not moot.

RAC further argues plaintiffs lack standing to challenge the $1.99 expedited payment fee because, according to RAC, plaintiff Spruell has conceded that she did not actually pay the $1.99 fee. Plaintiffs may only invoke California's *McGill* rule if they have standing and seek public injunctive relief in federal court. *Stover v. Experien Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir. 2020).

In her original complaint, Spruell alleged that she had "made several payments to [RAC] by telephone and was charged, and paid, a $1.99 fee each time." In her deposition, she described making telephone payments that incurred the $1.99 fee. She provided no other evidence of having made those payments. When RAC asked, "What evidence do you have that you made a payment by phone in this case?" Spruell responded, "I don't have no documents." A few minutes later, RAC asked again, "You don't have any

receipts showing that you ever paid an expedited payment fee of $1.99, right?" Spruell responded, "No, like how would I have a receipt?" In her written responses to RAC's interrogatories, Spruell admitted that she does not have documents showing that she paid the $1.99 fee, and that she "cannot identify any witnesses who could show" that she paid the fee.

The district court did not address the issue of Spruell's standing to challenge the $1.99 expedited payment fee in its order denying RAC's motion to compel arbitration. We remand to allow the district court to do so.

## Conclusion

We **AFFIRM** in part and **REMAND** in part.