**Jeffry LEVIN, Plaintiff,**

v.

**CAVIAR, INC., Defendant.**

**Case No. 15–cv–01285–EDL**

United States District Court,
N.D. California.

Signed November 16, 2015

Matthew David Carlson, Carlson Legal Services, San Francisco, CA, Shannon Liss-Riordan, Adelaide Pagano, Lichten & Liss-Riordan, P.C., Boston, MA, for Plaintiff.

Robert James Slaughter, Ashok Ramani, Erin E. Meyer, Simona Alessandra Agnolucci, Keker & Van Nest LLP, San Francisco, CA, for Defendant.

## ORDER ON MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MOTION TO DISMISS

Re: Dkt. No. 24

ELIZABETH D. LAPORTE, United States Magistrate Judge

## I. INTRODUCTION

This matter involves a putative class action as well as a representative action under the California Private Attorneys General Act of 2004 (PAGA) (Cal. Lab. Code, § 2698 et seq.) brought by Plaintiff on behalf of himself and others similarly situated against Defendant Caviar, Inc. d/b/a/ Try Caviar. FAC at 1, ¶¶ 34–36. Before the Court is Defendant's Motion to Compel Individual Arbitration and Motion to Dismiss. For the following reasons, the motion is GRANTED as to Defendant's individual claims. The Court, however, defers ruling on the issue of whether Plaintiff's PAGA claim is arbitrable until the Court has received additional briefing from the parties.

## II. BACKGROUND

The First Amended Complaint alleges that Defendant is a "San Francisco-based food delivery service, which provides food delivery services in cities throughout the country via an on demand dispatch system" (the "Caviar Platform"). FAC ¶ 8. Customers may request a courier to pick

up and deliver food from local restaurants using a smartphone application or via Defendant's website. FAC ¶ 9. Couriers are paid a fee for each delivery they complete as well as a percentage of the cost of the food order and any tip the customer adds. FAC ¶ 10.

The First Amended Complaint alleges that Defendant misclassified Plaintiff and other similarly situated couriers as independent contractors and, in so doing, violated provisions of the California Labor Code that require the employer to pay certain employee expenses (Cal. Labor Code § 2802) and to provide itemized wage statements (Cal. Labor Code § 226(a)). FAC ¶ 2.

Plaintiff applied to become a courier for Defendant in early December 2014. Velasquez Decl. ¶ 8. The general application process for Plaintiff and other couriers in San Francisco involved a group orientation session called an "onboarding session." *Id.* at ¶ 3. Plaintiff attended an onboarding session on December 15, 2014, where, among other things, the Courier Terms and Conditions Agreement was described. *Id.* at ¶ 8. The next day, a Caviar Logistics Associate sent Plaintiff an email that informed him that "[a]s noted in our onboarding session, I need you to please complete our Caviar Onboarding Form, which takes only a few minutes and contains your copy of the 'Courier Terms and Conditions' we reviewed during training." *Id.,* Exh. D. This email provided Plaintiff with a link to the web-based Caviar Onboarding form, which in turn contained a hyperlink to the Caviar Courier Terms and Conditions.

Plaintiff was required to and did check a box that "signif[ied] that [he] reviewed, underst[ood] and agree[d] to the Courier Terms and Conditions." *Id.* at Exh. A. The Courier Terms and Conditions includes the following language. The first

sentence of this paragraph is in the same type as the rest of the agreement, while the rest of the paragraph is in slightly larger type.

15.5 This Agreement is governed by laws of the State of California, without reference to conflicts of laws principles. Courier and Caviar agree that any disputes between them arising from Courier's agreement, services, or other relationships with Caviar shall be subject to final and binding arbitration before the American Arbitration Association ("AAA"). Such arbitration shall be conducted before a single, neutral arbitrator, pursuant to the applicable AAA rules but provide for discovery and remedies which would otherwise be available under applicable state or federal law. Such arbitration shall be conducted within the court jurisdiction within which the Courier primarily provides services to Caviar. Caviar shall pay for any arbitration fees, except that Courier shall pay that portion of the arbitration filing fee which is equal to or less than the amount charged by applicable state court for filing a civil complaint. Each party shall pay their own attorneys' fees incurred in the arbitration, except as provided by applicable state or federal law. Courier and Caviar agree that neither will bring any action on behalf of any party other than themselves, and specifically will bring no collective or class action against each other. This clause expressly precludes Courier and Caviar from bringing a civil court action against the other party on behalf of themselves or any other person or entity, except where immediate injunctive relief is necessary to protect property or safety.

*Id.* at Ex. C.

Plaintiff made his first delivery on the Caviar Platform on December 16, 2014. A

few months later, Plaintiff downloaded an update to the Caviar application on his smartphone and at that time again agreed to the Courier Terms and Conditions, which included an identical arbitration provision. *Id.* at ¶ 6–8, Reiss Decl. ¶¶ 6–7, 9–12.

On March 19, 2015, Plaintiff filed a putative class action complaint against Defendant. Dkt. No. 1. On May 27, 2015, he amended the Complaint and added a PAGA claim. Dkt. No. 19, FAC at 7. Defendant then filed this Motion to Compel Individual Arbitration and Motion to Dismiss. Defendant argues that all of Plaintiff's claims fall within the mandatory arbitration provision of the Courier Terms and Conditions and, therefore, this Court should compel Plaintiff to individually arbitrate his claims and dismiss this action.

Plaintiff makes four arguments in opposition to the Motion to Compel Arbitration. First, he contends that he is a "transportation worker engaged in interstate commerce" and as such falls under an exception to the Federal Arbitration Act ("FAA") set out in 9 U.S.C. § 1. Opp'n at 5. Second, he argues that the PAGA waiver in the Courier Terms and Conditions is unenforceable. Opp'n at 19. Third, he contends he did not actually agree to the arbitration provision because it was part of an invalid "clickwrap agreement." Fourth, he argues the arbitration agreement is unconscionable and therefore unenforceable. Opp'n at 20–21.

## III. LEGAL STANDARD

■■■ The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) (quoting 9 U.S.C. § 2). The FAA thus makes clear that "courts must place arbitration agreements on an equal footing with other contracts." *Id.* In deciding whether a dispute is arbitrable, courts must consider: (1) whether a valid agreement to arbitrate exists; and (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir.2000). If a party seeking to compel arbitration establishes these two factors, the court must compel arbitration. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original). When a contract contains an arbitration clause, there is a presumption of arbitrability such that doubts should be resolved in favor of coverage. *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). This presumption is particularly strong in the case of broad arbitration clauses. *Id.* Where a contract delegates the question of arbitrability to an arbitrator, the court's inquiry is limited to whether the demand for arbitration is "wholly groundless." *Clarium Capital Management LLC v. Choudhury*, 2009 WL 331588, at *5 (N.D.Cal. Feb. 11, 2009).

■■■ Generally applicable contract defenses, such as fraud, duress, or unconscionability, apply to arbitration agreements. *Concepcion*, 131 S.Ct. at 1746 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134

L.Ed.2d 902 (1996)). "Under California law, courts may refuse to enforce any contract found 'to have been unconscionable at the time it was made,' or may "limit the application of any unconscionable clause.' Cal. Civ.Code Ann. § 1670.5(a) (West 1985). A finding of unconscionability requires 'a "procedural" and a "substantive" element; the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results.' [Citations.]" *Concepcion,* 131 S.Ct. at 1746. Although a finding of unconscionability requires a showing of both procedural and substantive unconscionability, they "need not be present in the same degree." *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114, 99 Cal. Rptr.2d 745, 6 P.3d 669 (2000) (" 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' " (quoting 15 Williston on Contracts (3d ed.1972) § 1763A, pp. 226–227))."

## IV. DISCUSSION

### A. FAA Exemption for Transportation Workers Engaged in Interstate Commerce Under 9 U.S.C. § 1

Plaintiff first contends that the Motion to Compel arbitration should be denied because he falls within the FAA exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1, *see also Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

In arguing that he and other delivery drivers were "engaged in interstate commerce," Plaintiff cites a number of cases that establish that delivery drivers may fall within the definition of "transportation workers" and can, therefore, be exempt from the FAA. *See, e.g., International Broth. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC,* 702 F.3d 954, 957 (7th Cir.2012) (truckers transportation workers within the meaning of § 1 of the FAA). Further, even occasional interstate transportation can trigger this exemption. *Id.* Plaintiff also cites cases that hold that employees who oversee the transportation of goods in interstate travel may fall within the scope of this exception. *See Palcko v. Airborne Express, Inc.,* 372 F.3d 588, 594 (3rd Cir.2004) (supervisor who did not himself deliver packages but monitored the performance of delivery drivers who facilitated interstate deliveries exempt from FAA was a transportation worker engaged in interstate commerce); *Zamora v. Swift Transp. Corp.,* 2008 WL 2369769, *6 (W.D.Tex. June 3, 2008) (manager who did not engage in delivering goods was nevertheless exempt under § 1 because his job was "critical to the operation of the trucks, the trucking terminal and the trucking company," which operated in interstate commerce.) Finally, Plaintiff asserts that that it does not matter whether a transportation worker transports goods on behalf of his employer or does so on behalf of a third party; so long as the transportation worker drives across state lines he is "actually engaged in the movement of goods in interstate commerce." *Circuit City,* 532 U.S. at 112, 121 S.Ct. 1302.

Plaintiff, however, has not shown that he or any other similarly situated delivery driver ever made trips across state lines. In other words, Plaintiff has not shown that his deliveries to San Francisco Bay Area customers of food prepared by San Francisco Bay Area restaurants constitute "engaging in interstate commerce."

Plaintiff nonetheless contends that he was "engaged in interstate commerce" because he 5 and couriers like him "facilitate the transportation of food that may have originated, or been prepared, across state lines to customers at their homes and businesses" and "[b]y delivering food orders to consumers, the couriers serve as the final step in the flow of food items in interstate commerce." Opp'n at 6. However, the cases on which Plaintiff relies do not support his position. In *Palcko*, 372 F.3d at 592–93, the court held that an Airborne employee who was not herself a driver, but who monitored the performance of truck drivers who delivered packages, including to and from the airport for shipping around the country, was a transportation worker engaged in interstate commerce because her work "was so closely related to interstate and foreign commerce as to be in practical effect part of it." *Id.* at 593. In *Christie v. Loomis Armored US, Inc.*, 2011 WL 6152979, *3 (D.Colo. December 9, 2011), the court noted that in the case before it the employer was "registered with the Department of Transportation and identifies itself as engaged in the business of interstate transport of currency." Further, the employee's job was to "transport currency, a good that is undisputedly in the stream of interstate commerce." *Id.* In finding that the employee was a transportation worker exempt from the FAA, the *Christie* court appears to have relied on the *Palcko* court's description of "engaged in commerce" as work "so closely related to interstate and foreign commerce as to be in practical effect part of it." *Palcko*, 372 F.3d at 593. Here, by contrast, Defendant does not identify itself as being engaged in the interstate transport of goods, as the employer in *Christie* did, nor are the prepared meals Plaintiff delivers a type of good—like currency—that is "indisputably" part of the "stream of commerce.

■ Defendant points out that Plaintiff seeks a broad reading of the term "engaged in interstate commerce," while courts have consistently held that this term should be narrowly construed. The Supreme Court in *Circuit City*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234, considered whether a Circuit City employee who was a sales counselor in a store in Santa Rosa, California fell with the § 1 exemption. The Court concluded he did not, noting that "[m]ost Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce.' " *Id.* at 112, 121 S.Ct. 1302 (citing *Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1471 (D.C.Cir.1997)). Section § 1 of the FAA narrowly is read narrowly in order to give effect to Congress's intent to "compel enforcement of arbitration agreements in response to then-prevalent judicial hostility toward such agreements, especially given the fact that more specific and comprehensive federal arbitration procedures for seamen and railroad employees were already in existence or on the verge of passage." *Palcko v. Airborne Express, Inc.*, 372 F.3d at 592–93 (citing *Circuit City*, 532 U.S. at 121, 121 S.Ct. 1302). The *Circuit City* court also emphasized the limited reach of the phrase "engaged in commerce," which covers "only persons or activities within the flow of interstate commerce," *Circuit City*, 532 U.S. at 117, 121 S.Ct. 1302, in contrast to the terms "affecting commerce" or "involving commerce," which indicate Congress' intent to regulate to the outer limits of its authority under the Commerce Clause." *Id.* In *International Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, the court drew a contrast between § 2 and § 1 of the FAA. Section 2 broadly reaches any contract

"evidencing a transaction involving commerce," while § 1 contains a more narrow exemption for "transportation workers," limited to those actually engaged in interstate commerce. *See also Circuit City*, 532 U.S. at 112, 114, 121 S.Ct. 1302 ("basic coverage authorization under § 2 of the Act" broader than "exemption from coverage under § 1").

Courts have held that workers such as chefs involved in the preparation of food are not "engaged in commerce," even if the ingredients may have been part of the "stream of commerce." *See Si v. CSM Inv. Corp.*, 2007 WL 1518350 (N.D.Cal. May 22, 2007); *Lopez v. Top Chef Inv., Inc.*, 2007 WL 4247646 (S.D.Fla. Nov. 30, 2007). Although these cases involved the Fair Labor Standards Act rather than the FAA, they do provide guidance on the term "engaged in commerce." As the *Si* court put it: "The mere fact that the food may have passed in interstate commerce prior to arriving at the restaurant does not mean that the Plaintiff was engaged in commerce. In a California state case, the court of appeal held that "[g]oods arriving from out of state that are unloaded and held in a warehouse before being loaded onto trucks and delivered to customers do not terminate their interstate journey if 'there is a practical continuity of movement of the goods until they reach the customers for whom they are intended.' " *Bell v. H.F. Cox, Inc.*, 209 Cal.App.4th 62, 77, 146 Cal.Rptr.3d 723 (2012) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460 (1943)). Ingredients contained in the food that Plaintiff ultimately delivered from restaurants ended their interstate journey when they arrived at the restaurant where they were used to prepare meals.

Further, a number of courts have held that local delivery drivers do not fall within the transportation exemption to the FAA. In *Hill v. Rent–A–Center, Inc.*, 398 F.3d 1286, 1289–90 (11th Cir.2005), the Eleventh Circuit distinguished between a transportation worker engaged in interstate commerce and the "activities of an interstate traveling pharmaceutical salesman who incidentally delivered products in his travels, or a pizza delivery person who delivered pizza across a state line to a customer in a neighboring town." Similarly, in *Veliz v. Cintas Corp.*, 2004 WL 2452851 at *3 (N.D.Cal. Apr. 5, 2004), the court emphasized the narrow scope of the term "engaged in interstate commerce" when it rejected plaintiff's effort to broadly construe that term, which if accepted would overbroadly "include every employee from a trucker for a grocery store to a pizza deliveryman."

Courts also look to "whether a strike by the category of workers at issue would interrupt interstate commerce" in determining whether a worker falls within the FAA exemption. *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352 (8th Cir. 2005). The policy behind the FAA exemption for transportation workers engaged in interstate commerce is that it reach those workers who would, by virtue of a strike, "interrupt the free flow of goods to third parties in the same way that a seamen's strike or railroad employee's strike would." *Veliz*, 2004 WL 2452851 at *10. Here, a strike by local delivery drivers such as Plaintiff would not have such an impact.

In sum, Plaintiff's argument that local delivery drivers are "engaged in interstate commerce" asks this Court to adopt a broad reading of that term, despite the fact that the Supreme Court has made clear that this term must be narrowly construed. The Court declines to do so.

Finally, Plaintiff also argues that he is an employee as opposed to an independent contractor. The Court need not reach this

issue because Plaintiff was not "engaged in interstate commerce" in his local delivery work for Defendant.

## B. PAGA Waiver

■ The Caviar Courier Terms and Conditions agreement precludes Plaintiff from pursuing a representative claim under the PAGA.[1] In *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 383, 173 Cal.Rptr.3d 289, 327 P.3d 129 (2014), the California Supreme Court held that such waivers violate public policy and that arbitration clauses containing them are unenforceable. At the time the Motion to Compel Arbitration was filed, the district courts were split and the Ninth Circuit had not yet ruled on the issue.[2] After the hearing on this motion, the Ninth Circuit issued *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 439–441 (9th Cir. 2015), which held that PAGA waivers such as the one contained in the Caviar Courier Terms and Conditions are unenforceable. Defendant, however, requests that the

Court stay any decision on the enforceability of the PAGA waiver until all appeals have been exhausted in the *Sakkab* case, while allowing the individual claims to go forward in arbitration. Defendant notes that the defendants in *Sakkab* have been given until November 11, 2015 to seek rehearing or rehearing en banc of the panel's ruling and estimates that any decision whether to vacate the panel decision pending en banc review will likely not occur until year's end. Dkt. 41, at 1.

■ The general rule regarding the issuance of a stay while other proceedings bearing on issues in the case are litigated is as follows:

> The district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Using this power,

---

**1.** Specifically, it provides: "Courier and Caviar agree that any disputes between them arising from Courier's agreement, services, or other relationships with Caviar shall be subject to final and binding arbitration before the American Arbitration Association "). Such arbitration shall be conducted before a single, neutral arbitrator, pursuant to the applicable AAA rules but provide for discovery and remedies which would otherwise be available under applicable state or federal law. Such arbitration shall be conducted within the court jurisdiction within which the Courier primarily provides services to Caviar. Caviar shall pay for any arbitration fees, except that Courier shall pay that portion of the arbitration filing fee which is equal to or less than the amount charged by applicable state court for filing a civil complaint. Each party shall pay their own attorneys' fees incurred in the arbitration, except as provided by applicable state or federal law. Courier and Caviar agree that neither will bring any action on behalf of any party other than themselves, and specifically will bring no collective or class action against each other. This clause ex-

pressly precludes Courier and Caviar from bringing a civil court action against the other party on behalf of themselves or any other person or entity, except where immediate injunctive relief is necessary to protect property or safety. Velasquez Decl., Exh. C.

**2.** *Compare Hernandez v. DMSI Staffing*, 79 F.Supp.3d 1054, 1062–63 (N.D.Cal.2015), *Mohamed v. Uber Technologies, Inc.*, 109 F.Supp.3d 1185, 1219–20, 2015 WL 3749716, *23 (N.D.Cal. June 9, 2015) and *Zenelaj*, 82 F.Supp.3d 968, 978–79 (N.D.Cal.2015) with *Fardig v. Hobby Lobby Stores, Inc.*, 2014 WL 4782618, at *4 (C.D.Cal. Aug. 11, 2014), *Langston v. 20/20 Cos., Inc.*, 2014 WL 5335734, at *7 (C.D.Cal. Oct. 17, 2014), *Mill v. Kmart Corp.*, 2014 WL 6706017, at *7 (N.D.Cal. Nov. 26, 2014); *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F.Supp.3d 1070, 1083–86 (E.D.Cal.2014); *Chico v. Hilton Worldwide, Inc.*, 2014 WL 5088240, at *12–13 (C.D.Cal. Oct. 7, 2014); *Eubank v. Terminix Int'l, Inc.*, 2015 WL 4487257, *8 (S.D.Cal. July 22, 2015).

one case may be stayed in favor of another. *Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 863–64 (9th Cir.1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.").

In order to issue a stay, courts consider: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir.1962) (citing *Landis,* 299 U.S. at 254–55, 57 S.Ct. 163). Whether to grant a stay is a matter entrusted to the discretion of the district court. *See Landis,* 299 U.S. at 254, 57 S.Ct. 163 ("How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

When weighing the relevant interests, the court must be mindful that "if there is even a fair possibility that the stay for which he prays will work damage to some one else," the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255, 57 S.Ct. 163. Indeed, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* Moreover, the moving party must show more than the inherent inconvenience arising from involvement in litigation. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis.*" *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1112 (9th Cir.2005); *Klein v. Cook,* 2015 WL 2454056, at *2 (N.D.Cal. May 22, 2015).

The precondition for a *Landis* stay is the existence of "independent proceedings" that have not yet been resolved that have some bearing on a pending case. Here, a decision has been issued. On balance, the possibility that an en banc hearing may be held is not sufficient grounds on which to defer ruling on this issue. Moreover, Defendant is not merely seeking a stay pending the outcome of any en banc proceeding, but a stay "until all appeals have been exhausted," which would involve an even lengthier delay in ruling. Defendant does not point to any specific "hardship or inequity" that would result from proceeding. Accordingly, the Court will rely on *Sakkab.*

## C. Clickwrap Agreement

The parties agree that the Courier Terms and Conditions is a "clickwrap agreement." Plaintiff contends that the "clickwrap" arbitration agreement is entirely unenforceable on two grounds. First, he claims that the agreement is an unenforceable contract because Defendant "failed to display its terms and conditions on the same screen where the couriers had to click to accept the agreement" and also failed to track whether couriers even viewed these terms. Opp'n at 22. Second, he argues that the clickwrap agreement is procedurally and substantively unconscionable and therefore the arbitration agreement contained in it is unenforceable.

## 1. Contract Formation

Plaintiff states that the agreement to arbitrate was presented to him on his smartphone when he was "prompted to 'Become Available' but w[as] only informed in tiny fine print on . . . screen[ ]that "[b]y marking yourself available you agree to Caviar's Courier terms of service," which only became visible upon clicking a hyperlink. He contends that Defendant should have displayed these terms and conditions on the same screen couriers saw initially in order to create a binding contract.

■ Defendant responds that the cases on which Plaintiff relies in arguing that the clickwrap agreement is unenforceable are from districts other than this one as well as from the Massachusetts state court.[3] Considerable recent authority from this district finds agreements such as the one here enforceable. *See Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185, 2015 WL 3749716 (N.D.Cal. June 9, 2015); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752 (N.D.Cal. June 25, 2014); *Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904 (N.D.Cal.2011). These cases found that a contract was formed when the plaintiff clicked on a button to indicate assent to an agreement in which the terms themselves were accessed by hyperlink. In *Tompkins*, the court held that "[t]he fact that the [contract was] hyperlinked and not presented on the same screen does not mean that [users] lacked adequate notice" of the contract terms. *Tompkins*, 2014 WL 2903752 at *8. Further "courts have long upheld contracts where 'the consumer is prompted to examine terms of sale that are located somewhere else.' " *Id. Tompkins* relied on *Fteja v. Facebook*, 841 F.Supp.2d 829, 839 (S.D.N.Y.2012) and *Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904, 911–12 (N.D.Cal.2011), which enforced agreements that gave the plaintiff a chance to review the terms of service via hyperlink. These decisions are more persuasive.

With regard to Plaintiff's argument that Defendant did not display its terms and conditions on the same screen couriers use to accept the agreement, Defendant has provided evidence that Plaintiff clicked "Become Available" 14 times, which disposes of this contention. *See* Reiss Decl. ¶¶ 9–12. In *Tompkins*, 2014 WL 2903752 at *7, the court observed that that the plaintiffs did not dispute that users of a website were required to indicate acceptance of the terms of service before being able to use the site and, therefore, the Plaintiffs, who alleged they used the cite, must have clicked "I ACCEPT THE TERMS OF SERVICE." The court also observed that:

> Other courts have found that user access to portions of websites that require indicating assent to be sufficient evidence that the user clicked "I Accept." *See Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 237 (E.D.Pa.2007) ("Clicking 'Continue' without clicking the 'Yes' button would have returned the user to the same webpage. If the user did not agree to all of the terms, he could not have activated his account, placed ads,

---

**3.** These cases are as follows: *Grosvenor v. Qwest Communications Int'l, Inc.*, 2010 WL 3906253, *2 (D.Colo. Sept. 30, 2010); *Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.*, 2011 WL 5825979, *4 (D.N.J. Nov. 16, 2011); *Harris v. comScore, Inc.*, 825 F.Supp.2d 924, 927 (N.D.Ill.2011); *Hines v. Overstock.com, Inc.*, 668 F.Supp.2d 362, 367 (E.D.N.Y.2009); *Ajemian v. Yahoo!, Inc.*, 83 Mass.App.Ct. 565, 575, 987 N.E.2d 604 (2013) and *Lavitman v. Uber Technologies, Inc.*, 2015 WL 728187, *3 (Mass.Super. Jan. 26, 2015). What these cases have in common is the view that a clickthrough agreement may not be enforceable when the details of the agreement are not on the same page as the button that the plaintiff clicked to indicate assent to those terms.

or incurred charges."). Thus, Plaintiffs cannot credibly claim ignorance as to whether they actually clicked the appropriate checkboxes.

### 2. Unconscionability

Plaintiff also claims that the arbitration agreement is unenforceable because it is procedurally and substantively unconscionable.

#### a. Procedural Unconscionability

 "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir.2013). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in "no real negotiation." *Id.* "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.*

 The arbitration agreement, which is clearly a contract of adhesion, is procedurally unconscionable. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) (quoting *Ting v. AT & T*, 319 F.3d 1126, 1148 (9th Cir.2003)) ("contract is procedurally unconscionable under California law if it is 'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' "); *Aral v. EarthLink, Inc.*, 134 Cal.App.4th 544, 557, 36 Cal.Rptr.3d 229 (2005) (holding that clickwrap agreements on a take it or leave it basis are procedurally unconscionable); *Merkin v. Vonage Am. Inc.*, 2014 WL 457942, at *6 (C.D.Cal. Feb. 3, 2014) ("Such 'take-it-or-leave-it' contracts of adhesion are frequently found to be op-

pressive under California law."). Also, if Plaintiff is considered an employee rather than an independent contractor, then his agreement was a condition of employment, which adds an additional degree of procedural unconscionability. *See e.g., Laughlin v. VMware, Inc.*, 2012 WL 298230, at *5 (N.D.Cal. Feb. 1, 2012) ("Accordingly, because the Employment Agreement is an adhesion contract imposed by Defendants as a condition of employment without providing Plaintiff an opportunity to negotiate or refuse to sign the agreement, the court finds that it is procedurally unconscionable.")

#### b. Substantive Unconscionability

The fact that the arbitration agreement is, to some degree, procedurally unconscionable is not the end of the analysis. The agreement meets the five minimum requirements set out by the court in *Armendariz*, 24 Cal.4th at 113–14, 99 Cal. Rptr.2d 745, 6 P.3d 669, in determining whether an arbitration agreement is lawful. Those requirements are that an arbitration agreement "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Id.* at 102, 99 Cal.Rptr.2d 745, 6 P.3d 669. All are present here. Velasquez Decl. Ex. C ¶ 15.5. Plaintiff does not dispute this point. Rather, Plaintiff argues that if the PAGA claim is unenforceable, the entire arbitration agreement is substantively unconscionable and therefore void. Defendant counters that the Courier Terms and Conditions contains an "unambiguous severability clause" and the Court should, there-

fore, sever the PAGA waiver from the arbitration agreement.

Under California law, "[i]f the court as a matter of law finds [a] contract or any clause of [a] contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause as to avoid any unconscionable result." Cal. Civ.Code § 1670.5(a). Though the decision to sever is within the discretion of the court, the preferred course "is to sever the offending term and enforce the balance of the agreement." *Dotson v. Amgen, Inc.*, 181 Cal.App.4th 975, 986, 104 Cal. Rptr.3d 341 (2010); *see also* Cal. Civ.Code § 1670.5. A provision may be severed if it is "collateral" and removal would not "eviscerat[e] the central purpose of the Agreement." *Laughlin v. VMware, Inc.*, 2012 WL 298230, at *6 (N.D.Cal. Feb. 1, 2012). Generally, severance is not ordered if a contract is permeated by unconscionability such that "there is no single provision a court can strike ... to remove the unconscionable taint from the agreement." *Armendariz*, 24 Cal.4th at 124–25, 99 Cal. Rptr.2d 745, 6 P.3d 669. Likewise, if "severance would not serve the interests of justice, which is the 'overarching' consideration in the severability determination," *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 667, 9 Cal.Rptr.3d 422 (2004), then the court may refuse to enforce the arbitration agreement in its entirety.

Some courts have refused to sever and enforce agreements containing unconscionable terms even where the agreement contained a severance clause. *See Reyes v. United Healthcare Servs., Inc.*, 2014 WL 3926813, at *6 (C.D.Cal. Aug. 11, 2014) (refusing to sever two unconscionable provisions even though arbitration agreement contained a severability provision because court found that it did not have the capacity to cure the unconscionability through severance), *Sherwood v. Blue Cross*, 2007 WL 2705262, at *5 (E.D.Cal. Sept. 14, 2007) (refusing to sever where the defendant "openly admitted" that the agreement was procedurally unconscionability). However, those cases involve situations in which arbitration agreements contain a number of unconscionable provisions, or where there was an admission of unconscionability. Plaintiff contends that the arbitration agreement is "permeated" by unconscionability and, accordingly, the entire agreement is unenforceable. That was the situation in *Mohamed*, 109 F.Supp.3d at 1218–19, 2015 WL 3749716 at *22, where the agreement also explicitly contained non-severability language. The court went on to find that even if the waiver could be severed, the entire arbitration agreement was invalid because "the contract is permeated with a number of additional substantively unconscionable terms." *Id.* 109 F.Supp.3d at 1225, 2015 WL 3749716 at *27. These additional terms, which were barred under California law (specifically, an arbitration fee imposed on the employee, cost-splitting, a confidentiality clause, an intellectual property claim carve out, and a unilateral modification provision) formed the basis for the court's conclusion that the agreement was permeated with unconscionable terms.

Here, in contrast, the sole substantively unconscionable element of the Courier Terms and Conditions is the PAGA waiver. Moreover, the severability clause in the agreement is clear. Therefore, the Court will sever the PAGA waiver from the Courier Terms and Conditions.

Defendant argues that if the Court severs the PAGA waiver, it should then compel Plaintiff to arbitrate his individual claims while staying the PAGA representative claim pursuant to the FAA. In support

of this argument, Defendant cites *Franco v. Arakelian Enters., Inc.*, 234 Cal.App.4th 947, 966, 184 Cal.Rptr.3d 501 (2015) and *Alvarez v. Autozone, Inc.*, No. 14–cv–2471, Dkt. No. 35 (C.D.Cal. July 8, 2015) (staying PAGA claim pending arbitration of other claims)

However, Defendant has not addressed a more basic issue, which is whether the PAGA claim is also arbitrable, in which case it would not be stayed while the individual claims go forward, but would be included with them in the arbitration proceedings. The *Sakkab* court pointed out that although the PAGA waiver was not enforceable, the issue of whether the PAGA claim was arbitrable pursuant to the parties' arbitration agreement remained:

> We have held that the waiver of Sakkab's representative PAGA claims may not be enforced. It is unclear, however, whether the parties have agreed to arbitrate such surviving claims or whether they must be litigated instead. Accordingly, we reverse the district court's order dismissing the FAC, and return the issue to the district court and the parties to decide in the first instance where Sakkab's representative PAGA claims should be resolved, and to conduct such other proceedings as are consistent with this opinion.

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d at 439–441.

Several cases which have found PAGA waivers unenforceable have addressed the question of whether the parties' arbitration agreement encompasses PAGA claims. *Hernandez v. DMSI Staffing, LLC.*, 79 F.Supp.3d 1054, 1067 (N.D. Cal. 2015) noted that:

> The fact that the waiver provisions of the arbitration clauses at issue cannot be enforced to bar PAGA representative claims does not necessarily dictate which

forum is proper for their adjudication. The arbitration clauses here are ambiguous, because while both provisions broadly extend arbitration to all disputes arising out of or related to Plaintiff's employment, the waivers suggest that the parties did not anticipate that PAGA representative claims would be arbitrated. *See Iskanian*, 59 Cal.4th at 391, 173 Cal.Rptr.3d 289, 327 P.3d 129 ("The arbitration agreement gives us no basis to assume that the parties would prefer to resolve a representative PAGA claim through arbitration.").

The court then proceeded as follows:

> The Court directs the parties to meet and confer regarding their views on how to proceed in light of the holdings of this order. The Court will address whether to bifurcate and stay the PAGA matter pursuant to 9 U.S.C. § 3 at the next case management conference on March 26, 2015. To the extent the parties disagree on next steps, the parties shall agree on a briefing schedule on their respective interpretations of the DRA [Dispute Resolution Agreement] and Ross Arbitration Policy language. Such briefing shall be completed no later than March 12, 2015. If the parties are able to agree on next steps through meeting and conferring, the parties shall file a stipulation and proposed order.

The court denied the motion to enforce the waiver of the PAGA claims and deferred a decision on bifurcation and stay, while granting the motion as to the plaintiff's individual claims. *Hernandez v. DMSI Staffing, LLC.*, 79 F.Supp.3d at 1067–68.

In a case in which the arbitration agreement specified that it was governed by AAA rules, the court referred the question of whether the PAGA claims were arbitrable to the arbitrator:

In light of the Parties' decision to conduct the resolution of their dispute in accordance with the AAA Commercial Rules, the Court leaves the question of arbitrability to be decided by the arbitrator in accordance with the clear and unmistakable intent of the Parties as defined by prevailing case law. Additionally, the Court finds that the Agreement's waiver of Plaintiffs' statutory right to pursue representative PAGA claims is invalid as a matter of state law. However, as with the other causes of action asserted by Plaintiffs, the arbitrability of these representative claims must be decided by an arbitrator.

*Zenelaj v. Handybook Inc.*, 82 F.Supp.3d 968, 978–79 (N.D.Cal.2015).

The Caviar Courier Terms and Conditions states that "Courier and Caviar agree that any disputes between them arising from Courier's agreement, services, or other relationships with Caviar shall be subject to final and binding arbitration before the American Arbitration Association ("AAA"). Valasquez Decl., Exh. C. The arbitration agreement in this matter is governed by AAA rules, so it would appear that the Court may refer the issue of the arbitrability of the PAGA claim to the arbitrator. However, because the parties have not yet addressed this issue, the Court requests that they brief the question of whether the arbitrability of the PAGA claim should be determined by the AAA arbitrator.

## V. CONCLUSION

For the reasons set out above, the Court **GRANTS** the motion to compel arbitration of Plaintiff's individual claims and finds the PAGA waiver unenforceable. Within 14 days of the date this Order is filed, the parties shall each submit letter briefs of no more than five pages on the issue of whether the arbitrability of Plaintiff's

PAGA claim should be decided by the AAA arbitrator.

**IT IS SO ORDERED.**